UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
MAILISSA YAMBA-BUTLER a/k/a
BISA BUTLER, and BISA BUTLER, LLC,                          **Civil Action No.:**
                              Plaintiffs,

             -against-                                      **Complaint**

CLAIRE OLIVER FINE ARTS, INC. d/b/a CLAIRE
OLIVER GALLERY,
                           Defendant.
---------------------------------------------------------------------------x

       Plaintiffs Mailissa Yamba-Butler a/k/a Bisa Butler and Bisa Butler, LLC, by and through

their attorneys, Mazzola Lindstrom LLP, as and for their complaint against defendant Claire Oliver

Fine Arts, Inc. d/b/a Claire Oliver Gallery, allege upon information and belief as follows:

**The Parties**

       1.     Plaintiff Mailissa Yamba-Butler a/k/a Bisa Butler is an acclaimed contemporary

African-American artist whose artworks are highly valued and very much in demand. Her medium

of artistic expression is mainly quilts, in reference to the African-American experience. Her quilts

depict both famous historical and cultural figures, as well as unknown persons engaged in poses

and activities of significance to African-Americans, often modeled from vintage photographs and

contemporary photographs. Her works have been widely exhibited, and are held in the collections

of such museums as the Art Institute of Chicago, Los Angeles County Museum of Art and the

Smithsonian Institution.

       2.     Ms. Butler resides in New Jersey and maintains her art studio in New Jersey.

       3.     Plaintiff Bisa Butler, LLC is and was organized under the laws of the State of New

Jersey, its sole owner and member being Ms. Butler, currently operates from the same premises as

Ms. Butler's studio, does business under the name "Bisa Butler Art," and is a designated rights

holder of certain copyrighted artworks authored by Ms. Butler and listed below.

4.      Defendant Claire Oliver Fine Arts, Inc., is an art gallery, organized under the laws of the State of New York, with its principal place of business currently at 2288 Adam Clayton Powell Jr. Boulevard, New York, New York 10030, operating under the name Claire Oliver Gallery. For ease of reference, it shall be referred to as the "Claire Oliver Gallery," or just the "Gallery."

## Jurisdiction and Venue

5.      This is an action for, *inter alia*, equitable relief and copyright infringement arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq.

6.      The Court has subject matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

7.      The Court also has diversity jurisdiction over this matter, pursuant 28 U.S.C § 1332, as the contract at issue herein involves the promotion and sales of artworks having a value substantially greater than $75,000, and the plaintiffs are residents of New Jersey, while the defendant is a domiciliary of New York.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400 because the Gallery was incorporated in New York, conducts its business in this district, and is subject to personal jurisdiction in this District.

## Statement of Facts

9.      Bisa Butler is an acclaimed artist, who designs and creates original works of art.

10.     The Claire Oliver Gallery is an art Gallery established by Claire Oliver that represents artists in the marketing and sale of their works of art.

11.     Bisa Butler and the Gallery entered into an "Artist Representation and Art Work Consignment Agreement" on March 30, 2017 (the "Agreement.") (See Artist Representation and Art Work Consignment Agreement annexed hereto as Exhibit "A.")

12.     The Agreement was to be in effect for a term of five years with a provision for automatic renewal "unless stipulated against in writing by one of the parties to the other with sixty days' notice prior to the date of expiration."  (Ex. "A" at 1.)

13.     The Agreement also contains, *inter alia*, the following material provisions:

2.2 Artist shall deliver to Gallery any available completed Art Works as they are available or upon Gallery's request.…2.4 During the Term of this Agreement, Artist shall not solicit, exhibit, display or sell any Art Work to any other art gallery, private individual or public institution unless said exhibition or sale is organized through the Gallery. ***Gallery holds international exclusivity to represent Artist.***

2.5 The foregoing notwithstanding, Gallery will use its ***best efforts*** to create opportunities for Artist to exhibit work at other venues, including to museums, institutions and other important galleries.

3. Gallery's OBLIGATIONS. During the Term of this agreement, Gallery shall:

3.1 Using their ***best efforts*** to develop and implement a comprehensive marketing plan for marketing and promotion of the Artist and her Art Works.

…

6. INTELLECTUAL PROPERTY RIGHTS.  Artist hereby retains all copyright and other intellectual property rights for her Art Works.

7. TERMINATION.

This Agreement may be terminated upon notice from Artist if:

7.1 If Gallery fails to cure any material breach of this Agreement within Thirty (30) days of notice from Artist of the nature of such breach.

(Ex. "A" at pp. 1-3, emphasis added.)

14.     In violation of Sections 2.4 and 2.5 of the Agreement, the Gallery failed to use its "best efforts" – as required by the agreement – to create opportunities for Ms. Butler to exhibit her artworks at museums, institutions and other important galleries and to market and promote Ms. Buter and her artworks internationally.

15.     Despite Ms. Butler being a world-renowned artist, with significant museum recognition, an exceptional CV, a tremendous social media following (*e.g.,* 255,000 followers on Instagram) and extraordinary collector interest, during the term of the Agreement, the Gallery failed to take advantage of opportunities to exhibit Ms. Butler's artworks and never exhibited Ms. Butler's artworks at any of the **major** annual international art fairs.

16.     For example, in or about 2021, the curators at the Tate Modern in London had expressed their desire to exhibit the work of new artists, but when Ms. Butler asked the Gallery for a proposal to be sent for review, the Gallery never provided it to the museum, in violation of the duty to use "best efforts" to create opportunities for Ms. Butler to exhibit her artworks internationally.

17.     Moreover, the Gallery never even attempted to have Ms. Butler's works exhibited at: Art Basel (Switzerland); Art Basel (Hong Kong); Frieze (London); FIAC (Paris); Zona Maco (Mexico); ARCO (Madrid); Art Dubai; TEFAF (Maastricht); Miart (Milan); Art Cologne; nor any other international city over the past four plus years, with the exception of entering Ms. Butler's work in a booth at 1-54 Contemporary African Art Fair in London three years ago.

18.     Nor did the Gallery attempt to have Ms. Butler's work exhibited in the online viewing rooms at any of the above major art fairs during the Covid-19 pandemic.

19.     The exhibit of Ms. Butler's works at one fair "solely dedicated to contemporary art from Africa and its diaspora" does not constitute "best efforts" to exhibit, market and promote

Bisa Butler and her artworks internationally. Aside from this one genre, Butler's artworks were never brought into the wider international art market, despite countless opportunities to do so in person and in online viewing rooms over the last four years.

20.     Rather, such constituted minimal efforts at best.

21.     While the Agreement would otherwise automatically renew on March 30, 2022 (unless either Ms. Butler or the Gallery served written notice of termination at least sixty days prior), Ms. Butler served an early notice of termination upon the Gallery on September 27, 2021, (the "Notice of Termination") pursuant to her right to terminate the Agreement under Section 7.1 due to the Gallery's material breaches by virtue of its failures to exercise "best efforts" to exhibit, market, and promote Ms. Butler and her artworks internationally. (See Notice of Termination annexed hereto as Exhibit "B".)

22.     Ms. Butler also sent a follow-up letter to the Notice of Termination on October 22, 2021, (the "Second Notice of Default") describing further material breaches of the Agreement. (See, Second Notice of Default annexed hereto as Exhibit "C.")

23.     The Gallery failed to cure its material breaches within thirty days of the September 27, 2021 Notice of Termination, thereby rendering the Agreement terminated as of October 27, 2021.

24.     Moreover, subsequent to serving the Notice of Termination, Ms. Butler has come to learn that the Gallery, in violation of its duties to use "best efforts" to market and promote her, has been – for want of a better term – badmouthing her in the art world.

25.     In violation of the Agreement, the Gallery disparaged Ms. Butler to Ms. Leanne Sacamore, a curator from Fondation Cartier, a prestigious Paris museum.

26.     Ms. Sacamore shared with Ms. Butler that when she met with the Gallery at the 1-54 Contemporary African Art Fair where she had flown from Paris to view Ms. Butler's works, she was told false and damaging information about Ms. Butler, which was manifestly intended to tarnish Ms. Butler's reputation.

27.     Such disparagement of Ms. Butler violated the Gallery's obligation to use "best efforts" to market and promote her, and constituted an incurable breach, as the damage was done and could not be undone.

28.     In further violation of the Agreement, the Gallery misrepresented to Ms. Christine Kim, a curator at the Los Angeles County Museum of Art ("LACMA"), that Ms. Butler was unavailable to attend the annual LACMA gala.

29.     Ms. Kim informed Ms. Butler that on or about October 29, 2021 the Gallery advised Ms. Kim that Ms. Butler would not be attending the annual gala, and that a different artist would attend, even though Ms. Butler's quilt of the recently deceased actor Chadwick Boseman was to be prominently exhibited. Indeed, this gala celebrated the premier of two new exhibits at LACMA directly related to Ms. Butler's work, "Black American Portraits" and "The Obama Portraits Tour," featuring the famed portraits of the former first couple by the gala's honorees Amy Sherald and Kehinde Wiley. By undermining Ms. Butler's participation, the Gallery failed to use its "best efforts" to market and promote Ms. Butler, and in fact harmed Ms. Butler's standing in both the art world and the African-American community.

30.     The LACMA donors who had purchased the Chadwick Boseman quilt were also falsely informed that Ms. Butler was not available to attend the gala, the Gallery thereby failed to use its "best efforts" to market and promote Ms. Butler, and in fact harmed Ms. Butler's standing in both the art world and the African-American community.

31.     When Ms. Butler spoke with Ms. Kim, the curator expressed outrage that the Gallery had lied to her in an effort to exclude Ms. Butler from the gala, having told her that Ms. Butler was simply not available.

32.     Though Ms. Butler has engaged in efforts to resolve this dispute amicably, the dilatory responses by the Gallery's counsel to Ms. Butler's efforts to terminate the Agreement on terms mutually acceptable to all, has caused Ms. Butler to infer that the Gallery is seeking to let the clock wind down, and then file a vindictive strike suit at the end of the Agreement's term to foul Ms. Butler's potential negotiations with more renowned galleries and dealers that will use "best efforts" to create opportunities for Ms. Butler to exhibit her work internationally and to market and promote her. Indeed, disturbingly, Ms. Butler has heard rumors within the art community that the Gallery intends to "crush" her.

33.     While a proposed settlement agreement was forwarded to counsel for the Gallery on December 9, 2021, and then resent on December 14 and December 23, the Gallery cancelled telephone calls scheduled to discuss resolution of the matter even though Ms. Butler provided all documentation requested by the Gallery's counsel. Such calls were scheduled for several times in January, must recently for January 21st and then January 26th, but such calls were postponed at defense counsel's request, who then failed to reschedule.

34.     Ms. Butler therefore seeks a declaration that the March 2017 agreement was terminated as of October 27, 2021, due to the Gallery's failure to cure its material breaches of the Agreement within thirty days of the Notice of Termination, as required under Section 7.1 of the Agreement.  (See, Ex. "A" at §7.1).

35.     While the Second Notice of Default acknowledges that the Gallery may have helped to advance Ms. Butler's "public profile," it further notes that a vast majority of the sales of

Ms. Butler's works were generated from connections that Ms. Butler herself made, in person, at museum exhibitions and on social media and did not result from the Gallery's "best efforts," or lack thereof.

36.     In addition, when Ms. Butler's artworks were exhibited at Expo Chicago in 2018 with the assistance of the Gallery, Ms. Butler had to pay a portion of the booth fees. That is, rather than the Gallery paying for the costs of exhibiting, marketing and promoting Ms. Butler, she was required to pay for her own exhibition and promotion, in violation of the Gallery's duty to use its best efforts to promote her.

37.     Moreover, in or about June and July of 2020, the Gallery began representing artists whose works are similar to Ms. Butler's, thereby diluting Ms. Butler's brand, and consequently breaching its duty to use "best efforts" to market and promote Ms. Butler.

38.     Like Ms. Butler's artworks, the works from these other artists involved figures made of fabric, either sewn or glued, life-sized – some based on vintage photos – and the coloring of the faces were shaded in the very same way that Ms. Butler shades her figures.

39.     Many prominent African-American collectors have also told Ms. Butler that they were either not prioritized or given any real consideration from the Gallery, such collectors including Janine and Lyndon Barrois (who sits on many museum boards, including the LACMA), Dr. Anita Blanchard (who sits on the board of the Art Institute of Chicago and the Studio Museum in Harlem), and Suzanne McFayden (who is the board chair of the Blanton Museum of Art and also sits on the board at the Studio Museum in Harlem).

40.     Thelma Golden, the Director and Chief Curator of the Studio Museum in Harlem, informed Ms. Butler that the Gallery never reached out to her to offer any piece for sale.

41.     In addition to the foregoing, the Gallery failed to use "best efforts" to market and promote Ms. Butler and her artworks and in fact harmed Ms. Butler's career and reputation with actions that appear discriminatory against members of the African-American community.

42.     The following are illustrative examples:

a.   Multiple African-American customers were ignored by the Gallery.

b.   Jill Scott, a well-known African-American actress and singer, was told by the Gallery that she must wait to purchase a Bisa Butler artwork, to the point that she felt, and so advised Ms. Butler, that the Gallery simply would not sell to her. Given Ms. Scott's prominence, a sale to her would have advanced Ms. Butler's career and standing in both the art world and the African-American community.

c.   Ava DuVernay, a well-known African-American filmmaker, was also rebuffed by the Gallery, despite the fact that selling an artwork to her would have advanced Ms. Butler's career and standing in both the art world and the African-American community.

d.    When a Caucasian customer, Emmanuel Monge, offered to buy that same artwork by Ms. Butler that Ms. DuVernay had wished to buy, the Gallery sold it to him without delay.

e.   The Gallery misrepresented to Ms. Butler that it was unable to reach Ms. DuVernay, but Ms. Oliver later admitted to a third party that she did not want to sell the piece to Ms. DuVernay.

f.   When Ms. Tina Knowles-Lawson, the mother of singer Beyoncé, wished to purchase an artwork as a birthday present for her daughter Beyoncé – which,

again, if consummated would have advanced Ms. Butler's standing in both the art world and the African-American community – the Gallery refused to sell the artwork to Ms. Knowles-Lawson, stating that museums and others were ahead of her on the waitlist.

g. When Ms. Butler conveyed to the Gallery her wish that Ms. Knowles-Lawson be prioritized – because of Beyoncé's iconic status and the boon to Ms. Butler's career of such a sale – the discussion evolved into a three-hour argument. Eventually, the Gallery agreed to sell the artwork to Ms. Knowles-Lawson.

h. Although Ms. Oliver argued that she did not recognize icons, she very was excited about the possibility of selling one of Ms. Butler's works – that had not yet been created – to the Caucasian musician Michael Peter Balzary a/k/a "Flea" (the stage name of a member of the rock band the Red Hot Chili Peppers), and even offered to pre-sell him the artwork based off of its source photo, a consideration that was not extended to any African-American clientele.

i. When Boris Kodjoe, a well-known Austrian-born African-American actor, excitedly purchased a print of Ms. Butler's from the Gallery on or about September 22, 2020, to give as a Christmas present to his wife Nicole Ari Parker, another well-known African-American actress, he was treated poorly (and so advised Ms. Butler) – as not only did the Gallery fail to have the artwork delivered until Christmas Day, the wrong artwork was delivered that day, thereby ruining his gift. (See September 22, 2020 invoice and various email correspondence between Mr. Kodjoe and Ms. Oliver annexed hereto as Exhibit "D.")

j.   During Ms. Butler's first exhibition at the Gallery, Ms. Oliver told Ms. Butler's husband, who is African-American, "You can go now!"

k.   Members of the African-American community in Harlem, where the Gallery is located, were treated with disrespect. For example, when a parent from the Harlem neighborhood asked to bring her child and some of her friends to visit the Gallery as part of a birthday celebration, she was discourteously told that the woman's child and friends could not visit the Gallery. This embarrassing incident was reported on various social media platforms.

43.   Additionally, the Gallery has failed to use "best efforts" to promote Ms. Butler by failing to timely handle transactions.

44.   For example, Neffi Walker, a client of the Gallery, contacted Ms. Butler and informed her that she continues to wait for an artwork she purchased – and paid for in full – in 2020.

45.   While Ms. Walker's name is included on the list of sales made by the Gallery, thereby implying that the transaction has been completed, it has not.

46.   The Gallery further violated the Agreement and damaged Ms. Butler's career and reputation by failing to respond to multiple customer correspondences, and, for example, carelessly sending incorrect artworks to purchasers. (See Ex. "D" and correspondences from other clients annexed hereto as Exhibit "E.")

47.   For all the foregoing reasons, the Gallery is in breach of the Agreement and its obligation to use "best efforts" to create opportunities for Ms. Butler to exhibit her works and to market and promote Ms. Butler and her works internationally.

48.     This action also arises out of the Gallery's wrongful use of images of several unique artworks created by Ms. Butler and Ms. Butler's name, image, portrait and likeness.

49.     Plaintiffs own copyrights in the creative works (the "Butler Copyrights").

50.     The Butler Copyrights are covered by one or more registrations with the U.S. Copyright Office. These registrations include, but are not limited to, the following:

| 1.  Full Title | Copyright Number | Date |
|---|---|---|
| *Africa The Land Of Hope* | VAu001446957 | 2021 |
| *Broom Jumpers* | VAu001447020 | 2021 |
| *Daughter Of The Dust* | VAu001447023 | 2021 |
| *Dear Mama* | VAu001450014 | 2021 |
| *Equestrian* | VAu001450010 | 2021 |
| *Forever* | VAu001451682 | 2021 |
| *I Am Not Your Negro* | VAu001446786 | 2021 |
| *Kindred* | VAu001450009 | 2021 |
| *Les Sapeurs* | VAu001446785 | 2021 |
| *Mighty Gents* | VAu001446799 | 2021 |
| *The Princess* | VAu001446791 | 2021 |
| *Three Kings* | VAu001450011 | 2021 |
| *To God and Truth* | VAu001447019 | 2021 |
| *Zouave* | VAu001450013 | 2021 |

**Pending:**

| Full Title | Case Number | Date |
|---|---|---|
| *The Warmth of Other Sons* | 1-11172654231 | 2022 |
| *The Storm, The Whirlwind, and The Earthquake* | 1-11172676241 | 2022 |
| *Wangari Maathai* | 1-11172849310 | 2022 |

51.     As the Agreement was terminated no later than October 27, 2021 (see ¶23 *infra*), any use of images of Ms. Butler's artworks, her name, image, portrait or likeness by the Gallery on its website or social media platforms (or that they caused to be otherwise publicly displayed,

published, distributed, copied or disseminated constitute) following that date was, is, and will continue to be an infringement of the Butler Copyrights and Ms. Butler's individual rights.

52.     The Gallery has continued to use Ms. Butler's name, image, portrait, likeness and images of her artworks for purposes of advertising and trade after the termination of the agreement, in violation of Ms. Butler's intellectual property and personal rights.

53.     By its misconduct, the Gallery has brazenly violated its legal and equitable obligations to Ms. Butler, *inter alia*, through its misuse of Ms. Butler's name, image, portrait, likeness and images of her artworks for purposes of advertising and trade without her post-termination consent.

54.     Any use of Ms. Butler's name, image, portrait and likeness without her signed, written consent is violative of the New York Civil Rights Law Sections 50, 51 except as may be specifically excluded therein.

55.     The full nature and extent of the use of images of Ms. Butler's artworks, as well as her name, image, portrait and likeness by the Gallery is unknown by plaintiffs at this time, such information being in the full custody, possession and control of the Gallery.

56.     All specific dates on which images of Ms. Butler's artworks, as well as her name, image, portrait and likeness, were used, entered the marketplace, and became visible online are unknown by plaintiffs at this time, such information being in the full custody, possession and control of the Gallery.

57.     The Gallery has commercially benefitted by use of Ms. Butler's name, image, portrait and likeness and images of her artworks within and without the State of New York.

58.     The Gallery has no defense to the infringing actions.

59.     Because Ms. Butler is an artist and the Gallery is an art merchant, and because the

artworks were entrusted by Ms. Butler to the Gallery within New York State, the status of the entrusted works, the proceeds of any sale of the entrusted works, as well as the relationship between Ms. Butler and the Gallery is all governed by and determined under the New York Arts and Cultural Affairs Law (hereinafter "NYACAL").

60.     Pursuant to NYACAL § 12.01(1)(a)(ii), all of the artworks entrusted by Ms. Butler to the Gallery were and are trust property in the hands of the Gallery for the benefit of Ms. Butler.

61.     Pursuant to NYACAL § 12.01(1)(a)(iii), all proceeds of the sales of artworks entrusted by Ms. Butler to the Gallery were and are trust funds in the hands of the Gallery for the benefit of Ms. Butler.

62.     As trust property and trust funds in the hands of the Gallery, Ms. Butler has an absolute ownership right to the artworks entrusted to it (up to and until any authorized sale) and in the event of any authorized sale an absolute ownership right to the proceeds of any such sale. Any purported sale after termination of authority and/or after any demand for a return of any work(s) would be unauthorized and would constitute an unlawful, improper exercise of dominion and control and a breach of fiduciary duty.

63.     Pursuant to NYACAL §§ 12.0(1)(a)(i), (ii) and (iii), with respect to every artwork entrusted to the Gallery by Ms. Butler, including but not limited to every artwork consigned for sale, the Gallery was Ms. Butler's agent, with responsibility for the conservation of such trust property and the remittance of any trust funds from any and every sale of a consigned artwork.

64.     As Ms. Butler's agents for the conservation and sale of such artwork, and for the remittance of any trust funds from any sale of an artwork consigned to it by Ms. Butler, the Gallery was a fiduciary on behalf of Ms. Butler, and subject to all requirements such a relationship entails, including, but not limited to, an obligation to accurately and fully account for any and all

transactions and to promptly remit any trust funds due to Ms. Butler.

65.     Implicit in the agreement between the parties and as an obligation imposed upon a bailee as a matter of law, the Gallery was responsible for the care and conservation of consigned works and other entrusted property while in its custody or control. Because the Gallery was obligated to return any works which were not sold upon termination of the Agreement, this obligation exists up to and until the works are delivered back into Ms. Butler's possession.

66.     The Gallery possesses or has control of fifteen unsold artworks belonging to Ms. Butler, and to which Ms. Butler has a superior possessory right, having a total fair market value of approximately $180,000 (the "Unsold Artworks").

67.     The Gallery's misconduct and breach of fiduciary obligation therefore includes wrongfully retaining consigned artworks after termination of the Agreement.

68.     Pursuant to a pre-termination obligation, Ms. Butler completed and caused to be delivered to the Gallery, for sale to the Smithsonian Institution for $90,000, the artwork known as *Harlem Hellfighters*. Though Ms. Butler understands that the Smithsonian has not yet paid for the work, though it has been delivered to the museum, a claim his hereby made for her share of the proceeds upon receipt thereof from the museum.

**First Cause of Action**
**(Declaratory Judgement Due to Breach of Contract)**

69.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

70.     By virtue of the afore-stated facts and breaches of the duty to use best efforts to represent Ms. Butler, the plaintiffs are entitled to a declaration that the agreement is terminated and that Ms. Butler has no further performance obligations under the Artist Representation and Art Work Consignment Agreement between the Gallery and Ms. Butler.

**Second Cause of Action**
**(New York Civil Rights Law §§ 50 and 51)**

71.     Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

72.     As set forth above, since the October 27, 2021 termination of the Agreement, the Gallery has continued to use Ms. Butler's name, image, portrait and likeness including, but not limited to, on the website https://www.claireoliver.com/ and on the Gallery's social media platforms, without Butler's written consent, within the State of New York, for purposes of advertising or trade.

73.     The New York Civil Rights Law Sections 50 and 51 specifically proscribe the use of an individual's name, portrait or picture for trade, commercial or advertising use without the written consent of said individual. Said statutes provide *inter alia*, that compensatory and punitive damages are recoverable thereunder (Sec. 51). Section 50 evidences a strong public policy against such unauthorized use. Section 51 enumerates civil remedies available thereunder including but not limited to money damages in the form of compensatory and/or exemplary damages and injunctive relief.

74.     The Gallery's proscribed uses of Ms. Butler's name, image, portrait and likeness are in direct violation of the statutes as there existed/exists no executed written consent since termination of the Agreement and notice to the specific uses complained of herein from the point of termination and notice.

75.     The Gallery employed and continues to employ Ms. Butler's name, image, portrait and likeness with knowledge that it had and has no authority to do so. Such usage is "willful" as defined by the language of New York Civil Rights Law Section 51 and as interpreted by applicable case law in this State.

76.     Ms. Butler has and will continue to suffer reputational harm, confusion of sponsorship and affiliation, and damages thereby.

77.     As a result of the foregoing and pursuant to said statutes, but not to the exclusion of any other remedies under common law or statute, Ms. Butler has been damaged and is entitled to relief as per statute in the forms of compensatory damages, in a sum to be determined by this Court, punitive or exemplary damages in a sum ultimately to be determined by this Court, and costs and expenses incurred by Ms. Butler in the prosecution of this action together with an Order from this Court permanently restraining the Gallery from utilizing Ms. Butler's name, image, portrait and likeness in any manner or for any purpose whatsoever.

**Third Cause of Action**
**(Article 5 of New York Civil Rights Law)**

78.     Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

79.     On October 27, 2021, the Gallery's authority to act on Ms. Butler's behalf was terminated and therefore the Gallery was under a duty to cease use of, and remove all references to, Ms. Butler and images of her artworks, including but not limited to on the Gallery's website and social media platforms.

80.     Ms. Butler's Notice of Termination and Second Notice of Default gave the Gallery actual and constructive notice of her intent that the Gallery cease, desist and refrain from further use of Ms. Butler's name, image, portrait and likeness, and images of her artworks.

81.     Notwithstanding Ms. Butler's explicit and implicit instruction, the Gallery has continued without Ms. Butler's consent to use Ms. Butler's name, image, portrait and likeness, her artworks, and images of her artworks, including, but limited to, on the Gallery's website and social media platforms for the purposes of advertising or trade within the State of New York.

17

82.     As a result, Ms. Butler has suffered reputational harm and damages arising from the diminution of the market value of her artworks and confusion regarding her representation among art collectors, galleries, art dealers, potential clients, potential agents, and other persons.

83.     As a result, Ms. Butler is entitled to damages, exemplary damages, and an order restraining the Gallery from using her name, image, portrait, likeness, artworks and images of her artworks.

**Fourth Cause of Action**
**(Copyright Infringement; 17 U.S.C. § 501)**

84.     Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

85.     Plaintiffs collectively own all right, title, and interest in and to the following.

| 1.  Full Title | Copyright Number | Date |
|---|---|---|
| *Africa The Land Of Hope* | VAu001446957 | 2021 |
| *Broom Jumpers* | VAu001447020 | 2021 |
| *Daughter Of The Dust* | VAu001447023 | 2021 |
| *Dear Mama* | VAu001450014 | 2021 |
| *Equestrian* | VAu001450010 | 2021 |
| *Forever* | VAu001451682 | 2021 |
| *I Am Not Your Negro* | VAu001446786 | 2021 |
| *Kindred* | VAu001450009 | 2021 |
| *Les Sapeurs* | VAu001446785 | 2021 |
| *Mighty Gents* | VAu001446799 | 2021 |
| *The Princess* | VAu001446791 | 2021 |
| *Three Kings* | VAu001450011 | 2021 |
| *To God and Truth* | VAu001447019 | 2021 |
| *Zouave* | VAu001450013 | 2021 |

**Pending:**

| Full Title | Case Number | Date |
|---|---|---|
| *The Warmth of Other Sons* | 1-11172654231 | 2022 |

| The Storm, The Whirlwind, and The Earthquake | 1-11172676241 | 2022 |
| Wangari Maathai | 1-11172849310 | 2022 |

86.     Plaintiffs have complied in all respects with the provisions of the Copyright Act, and hold valid copyright registrations covering these works.

87.     The Gallery has made unauthorized commercial uses, including, without limitation, by reproducing, distributing and publicly displaying images of the artworks protected by the Butler Copyrights.

88.     The Gallery, without authority, was and is making, causing to be made, and purporting to authorize the making of unauthorized copies of Ms. Butler's registered copyrighted works. The Gallery's conduct constitutes direct infringement of plaintiffs' exclusive rights under the Copyright Act to reproduce Ms. Butler's copyrighted works.

89.     The Gallery, without the permission or consent of plaintiffs, and without authority, is publicly displaying and purporting to authorize the public display of Ms. Butler's registered copyrighted works.

90.     The Gallery's conduct constitutes direct infringement of plaintiffs' exclusive rights under the Copyright Act to publicly display Ms. Butler's copyrighted works.

91.     Upon information and belief, the Gallery had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public records, knew or should have known that plaintiffs held the copyright in the Butler Copyrights, that the Gallery did not have a license, consent, or authorization by plaintiffs after termination of the Agreement for the use of Ms. Butler's artworks in any media or for any purpose whatsoever, and that any such use would be in violation of plaintiffs' copyrights.

92.     Representative images of the Gallery's unauthorized uses of plaintiffs' copyrighted properties are attached as Exhibit F.

93.     The Gallery's conduct has injured plaintiffs and has caused and will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

94.     As a direct and proximate result of the Gallery's infringement of plaintiffs' copyrights and exclusive rights under copyright, plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at plaintiffs' election, pursuant to 17 U.S.C. § 504(b), plaintiffs shall be entitled to their actual damages plus the Gallery's profits from infringement, as will be proven at trial.

95.     As such, plaintiffs seek injunctive relief pursuant to 17 U.S.C. § 502, as well as the Gallery's profits or statutory damages pursuant to 17 U.S.C. § 504, and plaintiffs' costs, including attorneys' fees, in prosecuting this action pursuant to 17 U.S.C. § 505.

96.     The Gallery's conduct is causing and, unless enjoined by this Court, will continue to cause plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to a permanent injunction requiring the Gallery to employ reasonable methodologies to prevent or limit infringement of plaintiffs' copyrights.

## Fifth Cause of Action
### (Replevin)

97.     Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

98.     Ms. Butler is the owner of the Unsold Artworks in the Gallery's possession, custody or control. Ms. Butler is entitled to the immediate and unconditional return of all such artworks.

99.     The Gallery, having full knowledge of Ms. Butler's rights to ownership and possession of the Unsold Artworks, has wrongfully and unlawfully deprived and continues to deprive Ms. Butler, and Bisa Butler LLC d/b/a Bisa Butler Art (as a rights holder), of the lawful possession, use, and benefit of this artistic property.

100.    Pursuant to C.P.L.R. § 7109(b), plaintiffs are entitled to an order, enforceable by contempt of court, directing the Gallery to immediately deliver to Ms. Butler all of the Unsold Artworks that remain in the Gallery's possession, custody or control belonging to plaintiffs.

### Sixth Cause of Action
### (Conversion)

101.    Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

102.    At all relevant times, Ms. Butler has had title to, a complete right of ownership in, and a complete right to possess the Unsold Artworks. Ms. Butler has never conveyed title to the Unsold Artworks to the Gallery.

103.    At all relevant times, the Unsold Artworks have been and are trust property in the Gallery's hands for Ms. Butler's benefit.

104.    At all relevant times, Ms. Butler's rights in the Unsold Artworks have been and are superior to the Gallery's rights in the Unsold Artworks. At no point has the Gallery acquired any right, title, or interest in or to any of the Unsold Artworks.

105.    Without Ms. Butler's permission, the Gallery continues to possess and exercise dominion over the Unsold Artworks, in derogation of Ms. Butler's rights. The Gallery's continued possession, custody, and control of the Unsold Artworks are without authority.

106.    The Gallery has dealt with the Unsold Artworks in a manner inconsistent with the rights of Ms. Butler thereto.

107.    The Gallery has unlawfully and willfully converted Ms. Butler's property.

108.    The Gallery has excluded and continues to exclude Ms. Butler from the lawful use and possession of the Unsold Artworks by maintaining physical possession of such Unsold Artworks after the termination of the Agreement.

**Seventh Cause of Action**
**(Violation of NYACAL § 12.01)**

109.    Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

110.    Ms. Butler was the sole creator of all artwork she consigned to the Gallery and is a creator of works of fine art and an "artist" within the meaning of New York Arts & Cultural Affairs Law § 11.01(1) ("NYACAL").

111.    The Gallery, through its agents and principals, is an "art merchant" within the meaning of NYACAL § 11.01(2).

a.  The Gallery is in the business of dealing in works of fine art.

b.  The Gallery, through its agents and principals, holds itself out as having knowledge or skill peculiar to such works.

c.  The Gallery, through its agents and principals, is an entity to which such knowledge or skill may be attributed by employment of agents or other intermediaries who by their occupation hold themselves out as having such knowledge or skill.

d.  Each of the Unsold Artworks is a work of "fine art" within the meaning of NYACAL § 11.01(9).

112.    By delivering or causing to be delivered the consigned works to the Gallery, a trust relationship was created under NYACAL § 12.01, under which the Gallery was obligated to hold the consigned works and all sales proceeds therefrom as trust property for the benefit of Ms. Butler.

113.    The Gallery's actions constitute a breach and violation of its statutory obligations to Ms. Butler under the NYACAL § 12.01. More specifically, the Gallery, amongst other things:

      a.   failed to return certain consigned works after the termination of the Agreement;

      b.   may have failed to safeguard consigned works from loss or damage; and

      c.   may have committed other acts of misconduct which are not currently known to Ms. Butler but will be learned upon further discovery.

114.    The Gallery is liable for any and all losses incurred and for any and all gains foregone by Ms. Butler as a result of the Gallery's breach of trust.

115.    By reason of the foregoing, Ms. Butler is entitled to: (i) the return of all unsold artworks belonging to Ms. Butler which are in the Gallery's possession; (ii) a full, legally sufficient, and sworn accounting; (iii) compensatory damages in an amount to be proven at trial plus prejudgment interest, pursuant to C.P.L.R. § 5001; (iv) an order enjoining the Gallery from the unlawful acts listed in the preceding paragraphs, and any and all other acts interfering with Ms. Butler's rights in the Unsold Artworks and the sale proceeds; (v) an order that the Gallery return all of Ms. Butler's property in the possession, custody, and control of the Gallery and/or their employees, agents, and associates; and (vi) attorney's fees, costs and expenses to enforce Ms. Butler's rights under NYACAL § 12.01 as provided for pursuant to NYACAL § 12.01(3).

**Eighth Cause of Action**
**(Breach of Fiduciary Duties)**

116.    Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

117.    Pursuant to NYACAL § 12.01, the Gallery is deemed to be an agent acting as fiduciary to Ms. Butler with respect to all the Unsold Artworks and with respect to any proceeds received by the Gallery in respect of the disposition of such artworks.

118.    As Ms. Butler's agent, the Gallery owed fiduciary duties of care and loyalty to Ms. Butler, which it has violated by, inter alia, unlawfully converting the Unsold Artworks.

119.    Ms. Butler and the Gallery had a fiduciary relationship and the fiduciary duties owed by the Gallery to Ms. Butler have been willfully breached.

120.    At all relevant times, the Gallery owed Ms. Butler a duty to act in accordance with the express and implied terms of the parties' agreements and have breached same, as alleged in the breach of contract cause of action.

121.    The Gallery's failure to return the Unsold Artworks to Ms. Butler after termination of the Agreement constitutes a breach of the Gallery's duty.

122.    As a direct, proximate, and foreseeable result of the Gallery's breach of its fiduciary duties, Ms. Butler has been injured and has suffered damages.

123.    As a direct, proximate, and foreseeable result of the Gallery's breach of its fiduciary duties, Ms. Butler is entitled to recover all commissions and any other compensation received by the Gallery in connection with the consignment of Ms. Butler's Unsold Artworks, pursuant to the faithless servant doctrine, in the event of any sale subsequent to the submission of this complaint.

124.    The Gallery should be ordered to return to Ms. Butler all Ms. Butler's property and funds in the possession, custody, or control of the Gallery and/or its employees, agents, and associates.

125.    The Gallery is liable for losses incurred and for gains foregone by Ms. Butler as a result of the Gallery's breach of fiduciary duty.

126.    By reason of the foregoing, Ms. Butler is entitled to: (i) the return of all unsold artworks belonging to Ms. Butler which are in the Gallery's possession; (ii) a full, legally sufficient, and sworn accounting; and, (iii) compensatory damages in an amount to be proven at trial plus prejudgment interest, pursuant to C.P.L.R. § 5001.

## Ninth Cause of Action
### (Violation of NY Estates, Powers and Trusts Law §11-1.6)

127.    Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

128.    Pursuant to NYACAL § 12.01, the Unsold Artworks are deemed trust property in the hands of the Gallery for Ms. Butler's benefit.

129.    Pursuant to NYACAL § 12.01, at all relevant times, the Gallery has been obligated to keep such trust property separate from the Gallery's individual property.

130.    The Gallery has violated its duty to keep Ms. Butler's trust property separate from the Gallery's individual property by wrongfully retaining the Unsold Artworks.

131.    As a result of the foregoing unlawful acts, the Gallery has violated Section 11-1.6 of New York's Estates, Powers and Trusts Law.

132.    As a direct, proximate, and foreseeable result of the Gallery's violations, Ms. Butler has been injured and has suffered damages.

133.    The Gallery should be enjoined from the foregoing unlawful acts, and ordered to return to Ms. Butler all Ms. Butler's property in the possession, custody, or control of the Gallery and/or its employees, agents, and associates.

## Tenth Cause of Action
### (Return of Chattels Pursuant to CPLR Chapter 71)

134.    Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

135.   Ms. Butler is the owner the owner, and is entitled to possession of, the Unsold Artworks.

136.   Ms. Butler never conveyed title or granted a security interest in any of the Unsold Artworks to the Gallery.

137.   Pursuant to NYACAL § 12.01, the Unsold Artworks are deemed trust property in the hands of the Gallery for the benefit of Ms. Butler. Ms. Butler has a statutory claim to the Unsold Artworks that is superior to any other claim.

138.   The Gallery remains in unlawful possession of the Unsold Artworks, as the Agreement pursuant to which it holds same has been terminated.

139.   By its actions described herein, the Gallery is in wrongful continued possession of property belonging to Ms. Butler, as the Gallery has not returned to Ms. Butler the Unsold Artworks despite termination of the Agreement.

140.   Ms. Butler is entitled to return of the Unsold Artworks.

141.   Ms. Butler has been injured and has suffered damages based on the Gallery's wrongful retention of the Unsold Artworks.

142.   Ms. Butler lacks knowledge of the location of the Unsold Artworks, over which the Gallery has retained unlawful possession.

143.   The Unsold Artworks are valuable works of fine art and unique chattels.

144.   The Gallery's unlawful possession of the Unsold Artworks has caused continuing damage to Ms. Butler's career, by preventing her from displaying and promoting her work.

145.   Ms. Butler is entitled to an order requiring the Gallery to return all Ms. Butler's property in the possession, custody or control of the Gallery, their agents, employees, contractors or any other person acting on the Gallery's behalf.

**Eleventh Cause of Action**
**(Injunctive Relief)**

146.    Plaintiffs repeat and reallege the allegations contained in each of the preceding paragraphs as if fully set forth herein.

147.    Due to the wrongful acts alleged herein, plaintiffs are entitled to an order against the Gallery, inter alia, permanently and preliminarily enjoining and restraining the Gallery, its agents, servants, employees, attorneys, and all those in active concert or participation with it from:

a.   further use of Ms. Butler's name, image, and artworks for any purpose, including but not limited to descriptions, images, copies, and listings of Ms. Butler's artworks.

b.   directly or indirectly infringing any of Ms. Butler's exclusive rights in the artworks and other copyrights, whether now in existence or later created, including without limitation by reproducing or publicly displaying these copyrighted works or selling any products bearing or consisting of copies these works, except pursuant to a lawful license or with the express authority of Ms. Butler;

c.   making any false statements or representations or engaging in any other activity that suggests that the Gallery or its business is in any way affiliated with, approved, licensed or endorsed by plaintiffs;

d.   effecting assignments or transfers, forming new entities or associations, or using any other entities or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in the subparagraphs above.

**Jury Demand**

148.    Plaintiffs demand a trial by jury as to all issues so triable.

**Prayer for Relief**

**WHEREFORE**, by reason of the foregoing, plaintiffs Mailissa Yamba-Butler a/k/a Bisa Butler and Bisa Butler, LLC hereby pray for the following relief:

1.      Permanently and preliminarily enjoining and restraining the defendant Claire Oliver Fine Arts, Inc., its agents, servants, employees, attorneys, and all those in active concert or participation with it from:

    a.   further use of Ms. Butler's name, image, and artworks for any purpose, including but not limited to descriptions, images, copies, and listings of Ms. Butler's artworks.

    b.   directly or indirectly infringing any of Ms. Butler's exclusive rights in the artworks and other copyrights, whether now in existence or later created, including without limitation by reproducing or publicly displaying these copyrighted works or selling any products bearing or consisting of copies these works, except pursuant to a lawful license or with the express authority of Ms. Butler;

    c.   making any false statements or representations or engaging in any other activity that suggests that the Gallery or its business is in any way affiliated with, approved, licensed or endorsed by plaintiffs;

    d.   effecting assignments or transfers, forming new entities or associations, or using any other entities or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in the subparagraphs above.

2.      Awarding plaintiffs their damages and defendant Claire Oliver Fine Arts, Inc.'s profits as a result of the Gallery's violations of the Copyright Act or, alternatively, at plaintiffs'

election, such statutory damages as may be proper, up to the maximum of $150,000 for each work that the Gallery has infringed.

3.      Directing that defendant Claire Oliver Fine Arts, Inc. report to this Court within thirty days after a permanent injunction is entered to show compliance with the foregoing requirements.

4.      Awarding to plaintiffs the defendant Claire Oliver Fine Arts, Inc.'s profits, after an accounting, or at the plaintiffs' election statutory damages, including willful statutory damages, pursuant to 17 U.S.C. §504 (c).

5.      Awarding to plaintiffs their costs and reasonable attorneys' fees and investigative fees pursuant to 17 U.S.C. § 505.

6.      Declaring that Claire Oliver Fine Arts, Inc. is in breach of the March 30, 3017 Artist Representation and Art Work Consignment Agreement, and declare it terminated as of October 27, 2021, and that any and all performance obligations on the part of the plaintiffs are therefor nullified.

7.      An order directing defendant Claire Oliver Fine Arts, Inc. to return all Unsold Artworks to Ms. Butler's possession at defendant's expense.

8.      An  order directing that the Gallery and its employees, agents, and all other persons acting in concert therewith, shall immediately:

      a.   provide Ms. Butler with a full, formal, and equitable accounting, including but not limited to:

          i.   A complete written inventory of all originals or copies of all artworks, Unsold Artworks, or any other property of Ms. Butler's, in either physical or digital form, in the possession, custody or control of the defendant

Claire Oliver Fine Arts, Inc. or any of its employees, agents, and all other persons acting in concert therewith;

ii.   A complete written statement of all transactions for the sale, loan, barter, exchange or other disposition of any originals or copies of Ms. Butler's artworks, the Unsold Artworks, or any other property of Ms. Butler's, in either physical or digital form, including the identity of the item, the date of the transaction, the identity of the purchaser, the purchase price and all other material terms of the transaction, along with supporting contemporaneous receipts or other documentation for all such transactions;

iii.   A complete written statement of all transactions for the publication of copies of the artworks, Unsold Artworks, as well as any other property of Ms. Butler's, including the identity of the item, the date of the transaction, the identity of the purchaser, the purchase price and all other material terms of the transaction, along with supporting contemporaneous receipts or other documentation for all such transactions;

b.   deliver to Ms. Butler, at the defendant Claire Oliver Fine Arts, Inc.'s expense, all originals and copies of the Unsold Artworks, as well as any other property of Ms. Butler's, in either physical or digital form, in the possession, custody or control of the Gallery, or any of their employees, agents, and all other persons acting in concert therewith, including all DVDs, hard drives, digital media players and any other device containing copies of such property of Ms. Butler's.

9.      An order declaring that the defendant Claire Oliver Fine Arts, Inc. remit to Ms. Butler any and all sales proceeds due and owed and to which Ms. Butler will be entitled for all sales.

10.     For an award of actual, punitive, compensatory, consequential, exemplary and/or special damages in an amount to be determined at trial.

11.     For an order awarding the costs of this action, including reasonable attorneys' fees; and for an order awarding such other and further relief as this Court may deem just and proper.

12.     Such further monetary damages as may be proved at trial, but no less than $1,000,000, plus costs, fees, and reasonable attorneys' fees, to the extent permissible by applicable law.

Dated:  February 11, 2022                          Respectfully submitted,
        New York, New York

                                                   MAZZOLA LINDSTROM LLP

                                                   By: *Wendy J. Lindstrom*
                                                       Wendy J. Lindstrom
                                                   1350 Avenue of the Americas, 2nd Floor
                                                   New York, New York 10019
                                                   D:  646.813.4345
                                                   M: 516.680.2889
                                                   wendy@mazzolalindstrom.com
                                                   *Attorneys for Plaintiff*

Of Counsel:   Richard E. Lerner
              S.G. Emmanuelle Molina